In the matter of the estate of ALLIE V. NORRELL, deceased.

[Argued May 23d, 1945.   Decided September 27, 1945.]

*Mr. Abraham J. Slurzberg,* for the appellant, Herman Harding.

*Mr. Robert S. Hartgrove,* for the respondents, Walter Hilliard and Frank R. Conwell.

The opinion of the court was delivered by

CASE, J.

The will of Allie V. Norrell was probated by the surrogate of Hudson County at the instance of the named executor, Walter Hilliard.   Hilliard was the nephew of Mrs. Norrell's

deceased husband. He and his wife had lived with Mrs. Norrell since a short time before Mr. Norrell's death on October 23d, 1942. Mr. Norrell had owned and operated an undertaking business which passed at his death to his widow and, under permission of the New Jersey Board of Embalmers and Funeral Directors, has since been operated for her by Frank R. Conwell, a licensed undertaker and embalmer, assisted by Hilliard, who is a registered apprentice serving under Conwell. Mrs. Norrell's will gave the entire estate, real and personal, except an insurance policy having a face value of $480, to Hilliard and Conwell in equal parts. Herman Harding, a non-resident collateral relative, filed with the Hudson County Orphans Court, on November 8th, 1944, a petition of appeal from the probate and the issuance of letters testamentary, and on the same day served a copy of the petition of appeal upon the executor. The grounds alleged in the petition were defective execution, insanity of the testatrix and undue influence. On November 17th, 1944, Harding caused citation to be issued, returnable December 8th, 1944. The citation was placed in the hands of the sheriff for service on the day of issuance but was not served until November 30th. The service was upon the executor and him only. On the return day the executor moved the Orphans Court to dismiss the appeal upon the ground that the court was without jurisdiction in that "the citations were not issued and served in accordance with the rules of the Orphans Court and the established practice thereof." The chief reliance of the executor seems to have been upon Orphans Court Rule No. 64 which provides that an appellant shall "within ten days after filing any petition of appeal with the Surrogate, unless the Orphans Court shall, for good cause, grant further time, cause the surrogate to issue citations to all the persons concerned, named in said petition of appeal, to appear before the Orphans Court of the same county on a day therein to be named and shall cause said citation to be duly served" and upon *R. S. 2:31–37* which directs that service shall be made, unless otherwise provided, ten days before the return day. The Orphans Court decided that citation had been properly served upon "all persons concerned," denied the executor's motion to dis-

miss the appeal, and determined that the appeal had, by operation of law, suspended the surrogate's order appointing the executor. On December 8th, 1944, the Orphans Court appointed an administrator *pendente lite* and directed the executor to deliver to him the assets of the estate. The executor refused to deliver the assets, and on December 14th the Orphans Court, on motion of the administrator *pendente lite* appearing *pro se,* issued an order to show cause why the executor and his proctor should not be held in contempt. Meanwhile, on December 12th, the executor appealed to the Prerogative Court from the refusal of the Orphans Court to dismiss the appeal from the surrogate and also from the order of the Orphans Court appointing the administrator *pendente lite.* Harding moved to dismiss both of those appeals, and the refusals of the Prerogative Court to dismiss are two of the matters argued here. On March 19th, 1945, the Prerogative Court restrained the administrator *pendente lite* from proceeding with the contempt and from taking or attempting to take possession of the assets of the estate and on March 27th, 1945, on application by the executor, ordered Harding, who was the respondent therein, to give security for costs. Those two orders are also made grounds of appeal before us. Harding, appellant here, argues those four matters, in that order, as points one, two, three and four, respectively.

As to point one, which is that the executor's appeal from the refusal of the Orphans Court to dismiss the appeal from the surrogate's order of probate and appointment of executor was frivolous: If the holding in *In re Myers' Estate, 69 N. J. Eq. 793,* on the construction of the expression "all persons concerned" is to be applied to the slightly different *status* which exists in the present case, and if the holding in *Sheldon* v. *Sheldon, 100 N. J. Eq. 24,* upon an equivalent Chancery provision that the time of service is only directory are to be taken as applicable to the issue here, then the executor's appeal to the Prerogative Court had frail substance; but those matters were open for determination and were, we think, properly reserved for meritorious consideration. We find no error under this point.

As to point two, that the appeal from the order of the Orphans Court appointing the administrator *pendente lite* should have been dismissed: The appeal to the Orphans Court from the surrogate's order of probate and for the issuance of letters had the effect of suspending the functions of the executor until the determination of the appeal, *Brown* v. *Ryder, 42 N. J. Eq. 356; Kayhart* v. *Whitehead, 77 N. J. Eq. 12; affirmed, 78 N. J. Eq. 580,* and since that is so no one, unless the administrator *pendente lite,* is lawfully in charge of the estate. The executor now asserts that if the administrator *pendente lite* is retained, the undertaking business cannot, under the undertaker's law, be operated. The argument is specious. The business for several years past has been operated under *R. S. 45:7–17* on behalf of Mrs. Norrell, who seems not to have been an undertaker and it has not been manifested that the business may not be continued during the litigation in that way and under that statute. Moreover, the exigencies of the business do not nullify the legal principle that the effectiveness of the surrogate's order of appointment is suspended during the pendency of the appeal from it and from the probate of the will which nominated the executor. The administrator *pendente lite* would likely retain the present management; certainly, as a representative of the court and not of either of the parties, *Davenport* v. *Davenport, 68 N. J. Eq. 611, 612,* he would be under court direction. Finally, the reasonableness of appointing such an officer to act for the court and to conserve the estate is obvious. If there is anything in Harding's contention that there was undue influence, that influence probably involved the executor Hilliard, who was a member of the decedent's household, a manager of her business, a beneficiary under her will to the extent of approximately one half of the estate and an apprentice under the man who was given the remaining half. There was occasion for the appointment of an impartial and disinterested custodian. Granting the jurisdiction of the Prerogative Court to appoint custodians or administrators with varying powers in appropriate instances, no change in this reasoning is thereby effected.

We have two important decisions bearing upon whether or

not an appeal lies from the appointment of an administrator *pendente lite,* neither of which is on all fours with our own case but in neither of which an appeal was allowed. The first is *Dietz* v. *Dietz, 38 N. J. Eq. 483,* an opinion by Chancellor Runyon as Ordinary and a leading case on certain phases of an appeal from such an appointment. Although the precise point therein is not inclusive of the one now before us the reasoning and the citations are persuasive. The body of the opinion cites *McGregor* v. *Buel, 24 N. Y. 166,* as holding that in New York the appointment of an administrator *pendente lite* is at the discretion of the surrogate and that an appeal will not lie from his order making such an appointment. The footnotes are to the effect that no appeal lies from the appointment of an administrator *pendente lite* although an appeal will lie from a refusal to appoint. The second, *Davenport* v. *Davenport (Court of Errors and Appeals), supra,* says in part:

"The court is charged with the preservation of the estate, and with a duty to see that it comes, intact, into the hands of the executor or general administrator, when appointed, for distribution under the will, or in accordance with the statute. The exercise of this power is in the interest of all the litigants. If there be a wrongful exercise of the power of appointing an administrator *pendente lite,* no doubt an appeal will lie, but no such appeal will lie because an appointee of the court is objectionable to either party, or because of the amount of bond required to be given by the court. In this regard the rule stated by Magie, Ordinary, in his opinion in this case, and the decision of Runyon, Ordinary, in *Dietz* v. *Dietz, supra,* is approved. There is no allegation in this case (waiving the question of whether the appeal from the order of the Orphans Court of September 18th brings up all questions) that the action of the Orphans Court in exercising the power to appoint an administrator *pendente lite* was improper or unnecessary to conserve the estate, except it be the suggestion that the estate was being cared for by one of the parties litigant, which, in our view, and probably in the view of the Orphans Court, was a satisfactory reason for the appointment. Pending the litigation, it is the court's duty to see

that the *corpus* of the estate is in independent hands and under its own control."

Also this:

"When the court conceives that the jeopardy of the *corpus* of the estate is such that its preservation requires the court's action, it may appoint its officer as administrator *pendenle lite* to protect it, and only in case of an abuse of this discretion can relief be had by appeal. Such a power in the court is essential to the proper administration of litigated estates."

We have it, therefore, under our cases, that from some phases of the appointment of an administrator *pendente lite* there is no appeal, and that when the court acts affirmatively upon its conception that the preservation of the *corpus* of the estate requires such an appointment recourse to appeal may be had "only in case of an abuse of this discretion."

It clearly appears that there was not a wrongful exercise of the power of appointment and that the Orphans Court in making the appointment did that which was manifestly proper. The appeal should, in our opinion, have been dismissed.

The disposition of the appeal from the Prerogative Court order restraining the contempt proceedings, which is covered by appellant's third point, will follow our disposition of the point last considered. The Prerogative Court did not undertake to assume, and apparently had no occasion to assume, jurisdiction over the administrator *pendente lite*. The order went simply on the theory and was directed toward the proposition that the contempt proceedings had been instituted after the appeal to the Prerogative Court and that the Orphans Court was, therefore, without jurisdiction. We differ from that conclusion.

*Hill's Case, 55 N. J. Eq. 764,* considered that when there is an appeal to the Prerogative Court, the Orphans Court is left empty of power, but *In re Wandell, 92 N. J. Eq. 195, 198,* clarified the law and, citing *Brown* v. *Ryder* and *Davenport* v. *Davenport, supra,* held that jurisdiction of the questions involved in the adjudication and which are the subject of the appeal, and only those, are removed into the appellate court, leaving all other matters in the court below, subject

to appropriate action and proceedings. That doctrine was reiterated and followed in *In re Bigelow, 94 N. J. Eq. 721,* and *Schuster* v. *Ventnor Gardens, Inc., 102 N. J. Eq. 357.* On an appeal from probate by the surrogate it is common practice that the appointment of the named executor be treated as suspended (see *Kocher's New Jersey Probate Law (1st ed.) 80,* and cases cited), that an administrator *pendente lite* be named and that the latter appointment carry through until the appeal from the probate is determined unless a material fault is charged. The reason is plain, because if such an appointment is made the subject of appeal, then either no one is officially in charge of the assets or, if a special administrator is appointed, that appointment also is subject to appeal, and so on, *ad infinitum,* with resulting confusion. If the main appeal goes in favor of the will and its proponent, the functions of the administrator *pendente lite* will come to an end. That condition may or may not be realized; meanwhile the assets will be held by a disinterested person against whose integrity and business capacity no question is raised. The appointment is one which might have been made by the court upon its own motion for the conservation of the estate. The assets, when held by such an administrator, are *in custodia legis. Davenport* v. *Davenport, supra; In re Barnett's Estate, 101 N. J. Eq. 222; Levigton* v. *Tuly, 126 N. J. Eq. 552.* With the appeal from the appointment dismissed the matter of the temporary care of the assets is still with the Orphans Court which, therefore, may compel the suspended executor to hand over. The restraint will be removed.

The appellant argues as his point four that the Prerogative Court had no authority to impose upon him the making of a deposit in the Prerogative Court as security for costs inasmuch as he was there, not on his appeal, but as a respondent brought there by his adversary.

Ordinarily, the right to require security for costs must be grounded in a statute. Authority for requiring a non-resident plaintiff to deposit security in a law action is found in *R. S. 2:27–424* and for requiring a non-resident complainant to deposit security in the Court of Chancery in *R. S. 2:29–25.* No equivalent provision is disclosed with respect to an appeal

lodged with the Prerogative Court. However, it is a matter of procedure rather than of substantive law, and long established practice or an authorized rule of court has, on occasion, in Chancery, been held adequate support. *Lillle* v. *Lewis, 109 N. J. Eq. 418.* No ancient practice in the Prerogative Court, and no pertinent rule of that court except such pertinency as lies in rules 87 and 95 have come to our attention. Rule 87 had no application other than for differentiation because it relates to the party appealing to that court, and the appellant here was not the appellant there. Rule 95 provides that the Prerogative Court may, in its discretion, direct that a deposit be made or that a bond be posted, in form and amount approved by it, to secure costs in any litigated matter. The making of that rule is, we believe, within the statutory authority of the Ordinary (*R. S. 2:30–1*). But the objective of the rule is not entirely clear. The present appellant argues that it is directed toward matters arising in the original jurisdiction of the court in contradistinction to the appellate jurisdiction; and this view has plausibility in that it makes rules 87 and 95 complementary and puts them in logical sequence. Whether so or not, such benefit as the executor might have drawn was waived by the repeated steps taken by him, with full knowledge of the non-residence, before asking for the deposit. If the fact of non-residence is known to the adverse party, he must apply for security before taking further step in the cause. That is the rule in Chancery, *Newman* v. *Landrine, 14 N. J. Eq. 291; Shuttleworth* v. *Dunlop, 34 N. J. Eq. 488,* and is equally appropriate here. The executor knew of Hardy's non-residence from November 8th, 1944, when the petition of appeal from the probate, which contained the information, was served upon him. The executor filed his notice of appeal on December 12th, 1944, and his petition of appeal in the Prerogative Court on December 16th, 1944; he was under notice, on or prior to December 28th, 1944, of a motion for dismissal to be made January 2d, 1945; he appeared and argued against that motion; on March 19th, 1945, he obtained an order denying the motion; on December 19th, 1944, he filed his petition to restrain the contempt proceedings; on March 19th, 1945, he obtained

the restraint order. Not until March 27th, 1945, did he obtain the order under appeal. His application was not timely and should, we think, have been denied.

For the purposes of the argument we have assumed that rule 95 applies, when promptly invoked, against a non-resident respondent on another's appeal in the Prerogative Court; but in view of the rather general practice of enforcing the requirement for security, when based on non-residence, against only the moving party, or a party seeking affirmative relief in the court where the application is made (see the citations *supra;* also *14 Am. Jur., Costs,* §§ *39, 40; 15 C. J., Costs,* §§ *464, et seq.; 20 C. J. S., Costs,* § *127*), we do not, in the absence of a comprehensive argument of the point, make a holding thereon.

The cause will be remanded to the court below, there to be dealt with consistently with this opinion. Costs are not allowed.

*For modification*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, COLIE, WELLS, RAFFERTY, DILL, FREUND, JJ. 12.